Diane WILLIAMS, Appellant,

v.

FERMENTA ANIMAL HEALTH COMPANY, Appellee.

No. 92–1116.

United States Court of Appeals, Eighth Circuit.

May 3, 1993.

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, en banc.

### ORDER

The suggestion for rehearing en banc is denied. Judge McMillian, Judge John R. Gibson, Judge Wollman, and Judge Beam would grant the suggestion for rehearing en banc. The petition for rehearing is also denied.

HANSEN, Circuit Judge, with whom BOWMAN, Circuit Judge, joins, concurring.

Lest anyone believe that the panel's majority opinion either condoned or implicitly approved the trial judge's comments and actions which are the focus of the instant dissent's analysis, a re-reading of the court's opinion reported at 984 F.2d 261 should dispel any such notion. To begin with, the record revealed that not one objection was made at trial by the plaintiff to any of the trial judge's comments which are now the focus of attention—not to those now complained of as having been made before the jury nor to those made to counsel out of the jury's presence. No motion for recusal because of trial judge bias and no motion for mistrial because of prejudicial trial judge comments were ever made. Accordingly, this court's review proceeded, of necessity, under the rubric of plain error. Despite the plaintiff's failure to be as concerned at trial as on appeal with the trial judge's statements, the panel majority found Judge Wright's comments to the jury on the evidence and about the importance of the attorneys' final arguments to be improper. We further declared that Judge Wright should not have permitted the defendant's counsel to invite the jury to write a letter to the defendant nor permitted the jury to do so, and we branded defendant's counsel's tactics in that respect as highly improper. However, our careful and deliberate study convinced us that no substantial prejudice resulted from

the improprieties. In effect, the jury in this case returned two unanimous verdicts on liability. One was on the regular verdict form. The second, more akin to a special verdict, was the jury's additional written statement, signed by each individual juror, which said in pertinent part:

> We feel that management is negligent in effectively dealing with personnel problems that arose within the company but *we're unable to find sufficient evidence to support Diane Williams's claim of racial discrimination by the Fermenta Animal Health Company.*

4 Tr. 10–11 (emphasis added).

In substance, while we found the same good cause to criticize the challenged comments of Judge Wright in this case as our dissenting brethren do, and we did so, we did not find the resulting prejudice which would require a reversal and a new trial. In the final analysis, the case must remain styled *Williams v. Fermenta*, not *Williams v. Wright.*

McMILLIAN, Circuit Judge, with whom JOHN R. GIBSON and BEAM, Circuit Judges, join, dissenting.

I am very troubled by Judge Wright's courtroom behavior in this case and accordingly dissent from the denial of petition for rehearing and suggestion for rehearing en banc.

The turbulent history of our democratic society has always stood for principles of fairness and equality. But the imprimatur of democratic ideals upon our judicial system does not in itself assure compliance or adherence to these principles. Their guardian rests securely with the impartial and ennobled administration of justice within our courts. "That in turn is dependent on a proper atmosphere in the courtroom.... [Because] the protection of the most generously conceived civil liberties presupposes a court overawed neither by interests without nor by disruptive tactics within the courtroom." *Sacher v. United States*, 343 U.S. 1, 23–24, 72 S.Ct. 451, 462, 96 L.Ed. 717 (1952) (*Sacher*) (Frankfurter, J., dissenting).

Excessive judicial intervention is always subject to our review under our supervisory power. Unfortunately, perhaps too often we excuse excessive judicial intervention by labelling it minor in comparison to the length of the trial, and therefore harmless. However, the behavior and demeanor of a judge during the course of a jury trial, regardless of length, must be such that a litigant is not left with the "slightest indication" that the judge favors one side or another. *Coast-to-Coast Stores, Inc. v. Womack–Bowers, Inc.*, 818 F.2d 1398 (8th Cir.1987). I believe that Judge Wright's erratic behavior during the course of the trial seriously undermined the integrity of our courts and should not be excused as harmless.

Justice Kennedy wrote that "the quiet rationality of the courtroom makes it an appropriate place to confront race-based fears or hostility by means other than the use of offensive stereotypes." *Edmonson v. Leesville Concrete Co.*, —— U.S. ——, ——, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991). Sadly, that goal was sorely missed in this case and a review of the record reveals that Judge Wright's trial demeanor was the determining factor. Addressing counsel Judge Wright stated:

> I'm not going to try this *damn* case again, so you guys either settle this case or do something because I'm not going to try this case again. You spent all this *damn* money and time, and I'm just not going to try it again.... I'm repeating myself but I'm not going to sit through this case again. *I've heard all these kinds of cases I want to hear. I'll tell you. It's like a broken record.*

4 Tr. at 4–5 (emphasis added).

The following exchange took place during the questioning of a defense witness by Fermenta's counsel:

Q. You know there's been some implication in questions that have been asked by Mr. Kurtz that Fermenta had no interest in hiring minorities, is that true?

> Mr. Kurtz: Excuse me. Judge, I object to the characterization on that issue and I think we're going to resolve that otherwise.

> Judge Wright: Well, I—listen the jury will remember but *I don't think there's been*

*any implication by any witness in this case that they—that this company didn't hire minorities and that they weren't interested in hiring minorities.* And so we don't need to ask that question.

3 Tr. at 95 (emphasis added).

Judge Wright over plaintiff's objection, allowed Fermenta's counsel at closing argument to urge the jury to write a letter instead of or in addition to rendering a verdict. Defense counsel was allowed to argue:

> If in your deliberations you look at the evidence and you see a glaring defect in the way people are handled, in the way someone's job is explained to them and you didn't like the way it happened, sit down— and I'm sincere about this. I am not being funny or flip. *Write a letter to [defendants], but do not allow that to interfere with your verdict.*

3 Tr. at 167 (emphasis added).

During plaintiff's closing argument the following exchange took place:

> Mr. Kurtz: Ladies and gentlemen, Mr. Bradshaw has not given you an explanation about why or how two lawyers trained in law and knowing about people taking oaths seem to say that it's okay to do what happened here in this case. Those things were intentional falsehoods and from that point forward this case was off on a bad foot. They know how—
>
> Mr. Bradshaw: Judge, I object to this statement of the evidence. There was no testimony from anyone that was an intentional falsehood by anybody. On the contrary the testimony was—
>
> Judge Wright: Wait a minute. Now, the jury, you've heard the evidence and you weigh the evidence and you make a decision about that and this is just argument. *What they say—I had to say this, but what they say doesn't amount to a hill of beans.* It's you, you've heard the evidence. You decide it on the evidence. So go ahead.

3 Tr. at 180 (emphasis added).

Furthermore, during deliberations the jury asked if they could write the letter to Fermenta that Fermenta's counsel suggested in closing argument. Judge Wright again over plaintiff's objection allowed the jury to write such letter. 4 Tr. at 8.

Finally, without regard to the possibility of future jury service by any of the jurors involved here, after the verdict, Judge Wright told the jury, *"I do not believe from hearing the evidence like you did that it was racially motivated. It's just that simple."* 4 Tr. at 11.

The above comments and misconduct by Judge Wright during trial were inconsistent with a system of justice that is supposed to be tempered by the highest sense of fairness. Judge Wright's courtroom comportment and entire approach to this case was bias. Regrettably, this bias impugned and clouded the integrity of our judicial process as I firmly believe that Diana Williams was denied a fair trial. *Rose v. Mitchell*, 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979). "Public respect for the federal judiciary is best enhanced by exacting high standards of judicial competence in the conduct of proceedings and by discouraging an assertion of power which is not restricted by the usual demands of Due Process and which too often manifests a failure of moral mastery." *Sacher*, 343 U.S. at 42, 72 S.Ct. at 471 (Frankfurter, J., dissenting). I respectfully dissent.